IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RAY A. WOODSON,
ADC #234719                                                                    PLAINTIFF

V.                          CASE NO. 4:16-CV-188-JLH-BD

FAULKNER COUNTY JAIL, et al.                                            DEFENDANTS

## RECOMMENDED DISPOSITION

**I.    Procedure for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Judge J. Leon Holmes. You may file written objections to this Recommendation. If you file objections, they must be specific and must include the factual or legal basis for your objection. Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without independently reviewing the record. By not objecting, you may also waive any right to appeal questions of fact.

**II.   Background**

Ray Woodson, formerly an inmate at the Faulkner County Jail ("Jail), filed this lawsuit without the help of a lawyer under 42 U.S.C. § 1983. He alleges that his medical needs were not addressed while he was detained at the Jail. (Docket entry #2)

1

In his complaint, Mr. Woodson did not specifically state what serious medical condition he suffered from or what prescription medication he was denied. Without that information, the Court could not determine whether Mr. Woodson had stated a colorable federal claim for relief. Instead of recommending dismissal, however, the Court gave Mr. Woodson thirty days to amend his complaint to add this critical information. (#4)

Mr. Woodson then filed an amended complaint. (#5) Based on the allegations in his amended complaint, Mr. Woodson stated deliberate indifference claims against Defendants Stewart, Grant, Randall, Andrews, and Doty.

Defendants have now moved for summary judgment on Mr. Woodson's claims against them. (#54) Mr. Woodson has not responded to the motion, and the time for doing so has passed. (#57) As a result, the Defendants' statement of undisputed facts (#55) is deemed admitted, and the motion is now ripe for decision.

### III. Discussion

#### A. Standard

Summary judgment is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no real dispute about facts that are important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving parties bear the burden of producing admissible

evidence showing that there is no real dispute. Once they offer such evidence, the nonmoving party must meet evidence with evidence to avoid summary judgment.

  B.  Deliberate-Indifference Claim

  1.  Factual Background

On March 2, 2016, Mr. Woodson was arrested and transported to the Jail. (#55-1 at p.1) On the same date, Mr. Woodson filed a medical request informing jailers that he had undergone spine surgery in September 2015. (#55-2 at p.129) On March 4, Defendant Grant examined Mr. Woodson. (*Id.*)

On March 7, Mr. Woodson signed an authorization for the release of his medical records from specific physicians. (*Id.* at p.15)

On March 9, Mr. Woodson filed a medical request stating that he was experiencing pain and numbness in his right arm, as well as tingling and cold finger tips. (*Id.* at p.131) He also complained that he had two broken screws in his right foot and a broken left rib. He requested knee braces and corrective surgery. (*Id.*)

On the following day, Defendant Grant saw Mr. Woodson and scheduled a first-available appointment for him with Defendant Stewart, the doctor for the Jail. (*Id.* at p.132) On March 10, Defendant Stewart examined Mr. Woodson and determined that his complaints were unsubstantiated. (*Id.* at p.19) In his affidavit in support of the motion for summary judgment, Defendant Stewart states that, after examining Mr. Woodson, he found no evidence to support Mr. Woodson's "alleged physical ailments," and described

3

the results of Mr. Woodson's examination as "normal." (*Id*. at p.2)

On March 11, Mr. Woodson filed a medical request explaining that he had three appointments scheduled with the Veteran's Administration ("VA"). (*Id*. at p.133) Defendant Stewart, however, had spoken with Mr. Woodson's case manager at the VA, Dunn Martin. (*Id*. at p.2) Mr. Martin informed Defendant Stewart that the VA does not provide care for incarcerated veterans and reported that Mr. Woodson did not have any current prescriptions with the VA. (*Id*.) In addition, Mr. Martin explained that any appointments scheduled for Mr. Woodson had been scheduled by his wife, and the VA personnel were not aware of Mr. Woodson's incarceration. (*Id*.)

On March 20, Mr. Woodson filed a medical request, again complaining of numbness, pain, and tingling in both arms. (*Id*. at p.135) Mr. Woodson also stated that he had an appointment with a neurosurgeon at the VA on March 23, 2016. (*Id*.) On March 21, 2016, Defendant Grant saw Mr. Woodson and scheduled another appointment with Defendant Stewart. (*Id*. at p.136) On the same date, Mr. Woodson filed a grievance complaining that Jail officials had been negligent in addressing his medical needs by refusing to provide prescribed appliances, pillows, and prosthetics. (*Id*. at p.8)

On March 21, 2016, Mr. Woodson submitted another medical request complaining of a broken rib. He also complained that Defendant Grant had refused to accept a breathing machine that Mr. Woodson's wife had brought him on March 9, 2016. (*Id*. at p.137) On the same day, Defendant Grant examined Mr. Woodson. (*Id*. at p.138) She told

4

him that Defendant Stewart had not ordered a breathing machine for him. (*Id.*)

On March 22, Defendant Stewart examined Mr. Woodson. (*Id.* at p.1) He did not note any changes in Mr. Woodson's physical condition and determined that Mr. Woodson should "continue care as ordered." (*Id.*) On the same date, Mr. Woodson filed a medical grievance explaining that a full copy of his VA medical records had been delivered. (*Id.* at p.141)

On March 24, Mr. Woodson filed a medical request form complaining of a broken rib and requesting corrective spinal and foot surgery. (*Id.* at p.139) On March 28, Defendant Grant examined Mr. Woodson and informed him that Defendant Stewart would review his medical records with him at his next appointment. (*Id.* at p.140)

On March 31, Defendant Stewart examined Mr. Woodson's VA medical records. (*Id.* at pp.3, 24) Those records revealed that Mr. Woodson was seen at the VA in February of 2016 for an alleged fractured rib. (*Id.* at p.3) The medical records showed no fractured rib, however, and no additional surgery or treatment was necessary. (*Id.*)

On the same date, Defendant Stewart also responded to Mr. Woodson's March 22 grievance and informed him that prosthetic devices could be brought to the Jail and used, subject to his review and approval. (*Id.* at p. 24)

On April 1, Mr. Woodson's wife brought Ranitidine, Latanoprost, Tamsulosin, Meloxicam, and Ergocalciferol to the County Jail. (*Id.* at p.25) All prescriptions were provided to Mr. Woodson with the exception of Ergocalciferol (only one pill available).

(*Id.* at p.145)

From April 5 through April 9, Mr. Woodson submitted several medical grievances complaining of pain and numbness in his right arm, as well as other medical issues. (*Id.* at pp.141-143) On April 5, Defendant Grant told Mr. Woodson that a family member could bring outside prosthetics and a pillow for him, subject to the doctor's approval. (*Id.* at p.142) In addition, Defendant Grant told Mr. Woodson that Defendant Stewart had contacted Mr. Woodson's case manager at the VA and his neurosurgeon, Dr. Allan Guccio. (*Id.* at p.143) Mr. Woodson was to be seen by Defendant Stewart at his first available appointment. (*Id.* at p.144)

On April 6, Mr. Woodson's wife brought him a pillow and Voldyne, an over-the-counter non-prescription incentive spirometer. (*Id.* at p.26) According to Defendant Stewart, Mr. Woodson was not allowed to receive the Voldyne because "the apparatus is made of hard plastic and was capable of being converted into a weapon." (*Id.* at p.4)

On April 7, Defendant Stewart spoke to Dr. Guccio. (*Id.* at p.27) Dr. Guccio told Defendant Stewart that Mr. Woodson did not need any further treatment and that he did not need breathing treatments, a special pillow, or additional surgery. (*Id.* at pp.27- 28) In addition, Dr. Guccio explained, Mr. Woodson did not comply with follow-up instructions or attend follow-up visits following his surgery in September of 2015. (*Id.*)

On April 12, Mr. Woodson filed another medical request complaining that he had not been provided two medications that his wife brought him on April 9. (*Id.* at p.145)

There is no record, however, of his wife's delivery of any medications to Mr. Woodson on that date, and there was no Cyclobenzaprine on the medicine cart for Mr. Woodson. (*Id*.)

On April 14, Jail medical staff notified Mr. Woodson that he would no longer receive Gabapentin because his prescription was out-of-date (over 30 days old). (*Id*. at p.29) On the same date, Mr. Woodson's wife brought him Cyclobenzaprine, Meloxicam, and Gabapentin. (*Id*. at p.30) All of the prescriptions for these medications were out-of-date. (*Id*. at p.4) In addition, Defendant Stewart determined that those medications were nonessential to Mr. Woodson's healthcare needs at that time. (*Id*. at pp.4-5)

The next day, Mr. Woodson filed another medical request inquiring why his prescriptions to certain medications were discontinued. (*Id*. at p.146) In response, Defendant Grant explained that any medication with a "fill date" over one month old had to be discontinued, and a new prescription would be needed. (*Id*.)

On April 18, Mr. Woodson submitted a medical grievance stating that Defendant Stewart had a duty to refill his prescription medication. (*Id*.) On the same date, Defendant Grant responded to Mr. Woodson's grievance explaining that Defendant Stewart would see him at the first available appointment. (*Id*.)

On April 20 and 24, Mr. Woodson submitted medical grievances complaining that his Lantaprost (eye drops) were missing from the medication cart. (*Id*. at pp.147, 148) Mr. Woodson was informed that the Lantaprost was removed because the prescription

was over 30 days old. (*Id.*)

On April 21, Defendant Stewart spoke with Mr. Woodson's case manager at the VA and was again informed that Mr. Woodson had lost all veteran benefits while incarcerated. (*Id.* at p.31)

On April 28, Mr. Woodson was scheduled to see Defendant Stewart to have his medication refilled. (*Id.* at p.5) Mr. Woodson, however, failed to appear for his appointment.[1] Without seeing him, Defendant Stewart could not write Mr. Woodson any new prescriptions. According to Defendant Stewart, had Mr. Woodson appeared for his appointment, he would have: "highly recommended" that Mr. Woodson's Lantoprost be refilled; "likely refilled [Mr. Woodson's] Tamsulosin and Rantadine, but replaced [Mr. Woodson's] once daily Meloxicam with twice daily Naproxin; and he "would have taken into consideration refilling [Mr. Woodson's] Cyclobenzaprine based upon his physical examination on that day." (*Id.*)

Mr. Woodson did not file another medical grievance or medical request until June 27, 2016, presumably because he had been released from custody. (*Id.* at p.6)

On June 27, Mr. Woodson explained that he had a prostate rectal exam scheduled for the following day and that he needed medications and a new prosthetic pillow. (*Id.*) The next day, a nurse examined Mr. Woodson and scheduled him to see Defendant

---

[1] According to his amended complaint, Mr. Woodson was released from custody on April 27, 2016. (#5 at p.4)

Stewart at the first available appointment. (*Id.*)

On June 29, Mr. Woodson filed a medical grievance asking Jail officials to contact his family to bring him medication. (*Id.*) The next day, Defendant Grant responded explaining that she had spoken with a female member of Mr. Woodson's family and requested that she bring medications. (*Id.*)

On July 4, 2016, Mr. Woodson submitted his final medical grievance complaining of numbness and tingling in his right arm. (*Id.*) On the following day, a nurse examined Mr. Woodson. (*Id.*) Three days later, Mr. Woodson was transferred to the Arkansas Department of Correction ("ADC").[2] (#55 at p.7)

2.      Analysis

Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain and is prohibited by the Eighth Amendment to the United States Constitution. *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove a deliberate-indifference claim, Mr. Woodson must show that he suffered from an objectively serious medical need and that the defendants knew of the need, yet deliberately disregarded it. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).[3] In this context, a "serious medical need" is one that

---

[2] In his declaration, Defendant Randall testifies that Mr. Woodson was transferred to the ADC on July 7, 2017, (#55-1 at p.1) It is clear, however, that is a typographical error given that date has not yet passed. (#55-1 at p.1)

[3] Based on his original and amended complaint, it is unclear whether Mr. Woodson was a pre-trial detainee or a convicted person at the time he filed this lawsuit. (#5 at p.4) This

9

has been diagnosed by a doctor as requiring treatment, or a need that is so apparent that a layperson would easily recognize the need for a doctor's attention. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

Defendants can be held liable only if they "actually knew of but deliberately disregarded" an inmate's serious medical need. *Id.* This showing requires a mental state "akin to criminal recklessness." *Id.* (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). This means that Mr. Woodson must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). Stated another way, to prevail on this claim, Mr. Woodson must show that the Defendants' actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997).

Clearly, Mr. Woodson disagreed with the Defendants' assessment of his medical needs and Defendant Stewart's decision to terminate his outdated prescriptions. His disagreement with treatment decisions, however, is not conduct that rises to the level of a constitutional violation. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (plaintiff must show more than even gross negligence, and mere disagreement with treatment

---

distinction makes little practical difference because the same deliberate-indifference standard applies in either case. *Morris v. Zefferi,* 601 F.3d 805, 809 (8th Cir. 2010).

decisions does not rise to level of constitutional violation).

Here, the undisputed evidence shows that Defendant Stewart routinely examined Mr. Woodson while he was detained and that Mr. Woodson was promptly seen by medical personnel each time he submitted a medical request or grievance. Furthermore, Defendant Stewart also contacted Mr. Woodson's case manager and neurosurgeon at the VA to confirm his opinion that additional treatment was not necessary. He further confirmed that Mr. Woodson did not need a breathing machine or prosthetic pillow. Importantly, Mr. Woodson was permitted to keep any current prescriptions family members brought to the Jail. Finally, had Mr. Woodson appeared at his April 28 appointment with Defendant Stewart, the doctor would have renewed many of Mr. Woodson's prescriptions.

Based on this undisputed evidence, the Defendants' conduct was reasonable and was far from "intentional maltreatment" by any measure. Defendants are entitled to judgment as a matter of law on this claim.[4]

C.   HIPAA Violation

In his complaint, Mr. Woodson alleges that Defendant Doty violated the Health Insurance Portability and Accountability Act ("HIPAA") when he told several other

---

[4] In their motion, Defendants Andrews and Randall also argue that they cannot be held liable based on their supervisory position in the County Jail and that all Defendants are entitled to qualified immunity. Because the Court has determined that Mr. Woodson has failed to state a constitutional claim as a matter of law, the Court will not address these arguments in this Recommendation.

detainees about Mr. Woodson's medical history. There is no private right of action under HIPAA. *Acara v. Banks*, 470 F.3d 569, 571–72 (5th Cir. 2006) ("Congress did not intend for private enforcement of HIPAA," and "[e]very district court that has considered this issue is in agreement that the statute does not support a private right of action"); *Bradford v. Blake*, 2006 WL 744307, *3 (E.D. Mo. Mar.23, 2006) (holding that HIPAA creates no private right of action enforceable under 42 U.S.C. § 1983) (citing cases).[5] Thus, Defendant Doty is entitled to judgment as a matter of law.

D. Official Capacity Claims

Defendants also are entitled to judgment as a matter of law on Mr. Woodson's claims against them in their official capacities. First, Defendants are employees of Faulkner County, Arkansas. Mr. Woodson's claims against these Defendants in their official capacities are, in effect, claims against Faulkner County. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). Local governments are not liable under § 1983 for injuries inflicted solely by their employees or agents. *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). Rather, a county is liable for the acts of its employee only when the employee is carrying out a county policy or custom. *Id.*; *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 632 (8th Cir. 2009).[6] Here, Mr. Woodson

---

[5] To the extent that Mr. Woodson asserts any pendant state-law tort claims regarding his right to privacy, the Court declines to exercise jurisdiction over those claims.
[6] For purposes of § 1983, a policy is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010). To establish a custom,

has failed to prove that he was injured as a result of any Faulkner County custom or policy.

Second, Mr. Woodson has failed to show any underlying constitutional violations. Because none of the Defendants violated any of Mr. Woodson's federally protected rights, his claim that a Faulkner County custom or policy injured him likewise fails.

## IV. Conclusion

The Court recommends that the Defendants' motion for summary judgment (#54) be GRANTED. Mr. Woodson's federal claims should be DISMISSED, with prejudice. Any pendant state-law tort claims should DISMISSED, without prejudice.

DATED this 24th day of May, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

---

a plaintiff must prove that the county engaged in a continuing pattern of unconstitutional misconduct, not just a single unconstitutional act. *Id.* at 902-903.